UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY SIMMONS,

    Plaintiff,

v.

Case No. 1:05-cv-744
HON. ROBERT HOLMES BELL

CORRECTIONAL MEDICAL
SERVICES, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Randy Simmons, an inmate at the Deerfield Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Correctional Medical Services (CMS), Dr. H. Pandya, and ITF Healthcare. Plaintiff alleges in his complaint that he was involved in an altercation on August 11, 2001, while awaiting trial at the Mount Pleasant Center. As a result, Plaintiff suffered a laceration of his left ear. Plaintiff was taken to Central Michigan Hospital, where his ear was surgically reattached. Shortly thereafter, Plaintiff was transferred to the Deerfield Correctional Facility.

Plaintiff alleges that beginning in November of 2002, a tumor developed on Plaintiff's left ear. On December 10, 2002, Plaintiff was diagnosed as having a Chondroma Keloid by Defendant Pandya. Defendant Pandya referred Plaintiff to the Riverside Correctional Facility Surgery Clinic for a biopsy and a surgical consult, which required authorization from CMS. Defendant CMS denied authorization on January 16, 2003, because the procedure was "cosmetic." Defendant CMS also stated that "keloids grow back after surgery." After repeated appeals by Defendant Pandya and staff, Plaintiff was finally approved for a surgery consult. On June 25, 2003,

Plaintiff was examined by Dr. Wisneski, who referred Plaintiff to a plastic surgeon. However, Defendant CMS refused to approve this referral, stating that the surgery was solely cosmetic in nature.

Plaintiff claims that the tumor is potentially cancerous, measures 4 cm by 4.5 cm, and causes Plaintiff constant pain, which is excruciating at times. Plaintiff states that he has had the tumor for three years, but still has not received treatment. Because of the tumor, which leaks and causes discomfort, Plaintiff has difficulty sleeping. In addition, the deformity resulting from his tumor his caused Plaintiff to suffer from constant ridicule from fellow inmates.

Plaintiff claims that defendants' conduct violated his rights under the Eighth Amendment. Plaintiff seeks injunctive relief.

Presently before the Court is the Defendants' Motions to Dismiss (docket #7), pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether Plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and

to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

In their motion to dismiss, Defendants contend that Plaintiff has failed to show a violation of the Eighth Amendment because his medical need was not serious and Defendants were not deliberately indifferent to Plaintiff's medical need. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 2004 WL 2792016, at *7 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 2004 WL 2792016, at *6, the inmate must "place verifying medical evidence in the record to establish the

detrimental effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. April 27, 2001); *Jones v. Martin*, 5 Fed. Appx. 434, *cert. denied*, 534 U.S. 833 (2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. April 4, 1997).

In Defendants' motion to dismiss, as well as in Defendants' reply to Plaintiff's response, Defendants state that Plaintiff does not suffer from a serious medical condition. As noted by Defendants, Plaintiff asserts that he has been diagnosed with having a Chondroma Keloid. Defendants refer to *Taber's Cyclopedic Medical Dictionary* (14th Ed.) for the definitions of both chondroma and keloid, and attaches copies of the pertinent pages as an exhibit to their reply to Plaintiff's response to the motion to dismiss. According to *Taber's Cyclopedic Medical Dictionary*, a chondroma is:

> A cartilaginous tumor of slow growth. It may occur any place where there is cartilage. It causes no pain.

*Taber's Cyclopedic Medical Dictionary* defines a keloid as:

> Scar formation in the skin following trauma or surgical incision. The tissue response is out of proportion to the amount of scar tissue required for normal repair and healing. The result is a raised, firm,

>> thickened red scar which may grow for a prolonged period of time.
>> Blacks are esp. prone to developing keloids.

(*See* Defendants' Exhibit A to the reply to Plaintiff's response to the motion to dismiss.)

In response to Defendants' assertions, Plaintiff contends that his "golf ball size tumor" on the left ear causes excruciating pain and bleeding, and that his life has been severely disrupted as a result of this condition. The court notes that a similar situation was addressed by the Second Circuit in *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003). In *Brock*, the plaintiff, a prison inmate, suffered a serious knife wound to his right cheek on December 19, 1998. After the removal of the plaintiff's sutures, he was referred to a dermatologist, who noted that the plaintiff had a history of keloid formation and recommended follow-up with steroid injections if the plaintiff began to keloid in the future. *Id.* at 161.

>> The *Brock* court stated:

>> Keloids are abnormal overgrowths of fibrous tissue that, when triggered by a skin injury, typically extend beyond the location of the original wound. They are elevated above adjacent skin and are discolored. They may continue to grow for years. An affidavit executed by Dr. Syed Farooq on Brock's behalf indicates that, beyond the potential of keoids to cause disfigurement, nerve fibers may become tangled in the overgrown tissue leading to "constant[ ] pain, local irritation, and paresthesias." Such symptoms are likely to be heightened when sensitive parts of the body, such as the face, are affected.

*Id.* at 161.

The plaintiff in *Brock* eventually did form a keloid, which caused him throbbing and burning pain, as well as anxiety. The keloid affected the plaintiff's ability to perform basic activities of daily living, such as eating, brushing his teeth and sleeping on his right side. The plaintiff complained of pain on numerous occasions, but he was not treated for the keloid until August of 1999, when a nurse prescribed antibiotic ointment and referred him to an outside consultation with an dermatologist. A prison physician concurred with the need for a referral, but the referral was

denied by the Regional Medical Director, who concluded that the nature of the consultation was "cosmetic." The prison physician did not appeal this denial because there were no collateral symptoms to justify such an appeal in light of the policy forbidding treatment of keloids in the absence of such symptoms. *Id.* at 161-62.

In addressing the issue of whether the plaintiff's medical needs were sufficiently serious to implicate the Eighth Amendment, the Second Circuit noted that the plaintiff's condition was a source of chronic pain that interfered with his ability to perform activities of daily living. In addition, the court noted that one doctor had indicated that the plaintiff should be followed up with steroid injections if he showed signs of developing a keloid, and a second doctor had referred the plaintiff to an outside dermatologist. The court stated that it would not require an inmate to demonstrate that he experienced pain that is at the limit of human ability to bear, nor would it require a showing that the condition would degenerate into a life-threatening one. The Second Circuit then concluded that the plaintiff's medical need was "serious" for purposes of showing a violation of the Eighth Amendment. *Id.* at 162-63.

In this case, Defendants claim that they were not deliberately indifferent to Plaintiff's medical needs because Plaintiff has been seen by medical professionals for his condition. Defendants state that Plaintiff's complaint is with regard to the specific treatment, and is not asserting that he was denied all treatment. According to Defendant Pandya's December 11, 2002, request for referral to Dr. Wisneski:

> Pt. has large thick multilobular swelling lt. ear, the skin is intact over it. Pt. had ear surgically repaired, while he was placed . . . at Mount Pleasant Psych facility, following kite by another patient/client.
>
> The swelling is [greater than 1 inch] in . . . [diameter.] Pt. cannot lie on lt. side because it presses and becomes painful. Pt. has no keloid anywhere else at other wounds.

(*See* Exhibit D to Plaintiff's complaint.)

Defendant CMS responded by asking for details regarding Plaintiff's surgery and what conservative treatments had been tried. In addition, Defendant CMS asked to be provided with a photograph of the lesion. Defendant Pandya responded by stating that conservative management was no treatment, and just amounted to watching it to see if it was growing. Defendant Pandya stated that Plaintiff continued to complain of pain and indicated that he was enclosing the operative report. On January 28, 2003, Defendant CMS denied the request for referral because the condition was "cosmetic" and keloids grow back after surgery. On January 30, 2003, Defendant Pandya appealed the denial, stating that Plaintiff has several scars on his body, none of which have turned into keloids, and that complex lacerations of the ear involving cartilage have known complications of non-keloidal tumors. Defendant CMS again denied the request for a consult. Defendant Pandya then indicated that he did not agree with the denial and would send the request to the Regional Medical Officer (RMO). (*See* Exhibit E to Plaintiff's complaint.)

A note by a physician's assistant dated March 20, 2003, requested that CMS review the March 20, 2003, progress note and consider a surgical consult with Dr. Wisneski because the growth did not appear to be a keloid. CMS then requested another photo of the growth. On April 2, 2003, Defendant CMS stated that a mid level may not appeal the denial of a referral without a written evaluation by the supervising physician. On April 3, 2003, Defendant Pandya stated that the evaluation had already been sent over to the RMO on February 4, 2003. Defendant Pandya also noted that the swelling size of the mass changed considerably, and that it shrank after Plaintiff expressed 10 to 20 mg of thick smelly fluid from the mass. Defendant Pandya stated that he made the original request for a referral. (*See* Exhibit E to Plaintiff's complaint.)

On May 29, 2003, Defendant CMS finally approved the surgical consult and Plaintiff was scheduled to be seen by Dr. Wisneski on June 25, 2003. Dr. Wisneski diagnosed Plaintiff as having a 4 cm by 4.5 cm keloid on the front and back of his left earlobe and requested that Plaintiff

be referred to a plastic surgeon. (*See* Exhibit F to Plaintiff's complaint.) Plaintiff alleges that the request for referral to a plastic surgeon was denied by Defendant CMS, who stated that the surgery was solely cosmetic in nature.

A review of the pleadings in this case reveals no deliberate indifference on the part of Defendants Pandya and ITF Healthcare. In fact, Defendant Pandya appears to have done everything within his power to ensure that Plaintiff would receive surgical treatment for his condition. However, in the opinion of the undersigned, there is an issue of fact with regard to whether Defendant CMS acted with deliberate indifference. Defendants claim that Defendant CMS cannot be held liable in a § 1983 action under a theory of respondeat superior. Defendants rely on *Starcher v. Correctional Medical Services*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001) for the proposition that direct liability under § 1983 for a private corporation requires that the liability be premised on some policy that caused a deprivation.

In *Starcher* the Sixth Circuit held that CMS could not be held vicariously liable for the actions of its agents on a respondeat superior basis. Rather, CMS's liability must be premised on some policy that caused a deprivation of the plaintiff's Eighth Amendment rights. *Starcher v. Correctional Medical Services*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). In his response to the motion to dismiss, Plaintiff asserts that Defendant CMS has an unwritten custom of consistently denying prison inmates adequate health care in the interest of make a profit. In addition, the allegations in Plaintiff's complaint, which show that Defendant CMS continually refused to authorize treatment despite the recommendation of at least two doctors and one physician's assistant, support Plaintiff's claim of a pattern of conduct by Defendant CMS. In *Brock*, the court noted that the Chief Medical Officer of the Department of Corrections could be held liable if a jury could reasonably find that he had created a policy or custom intended to bar the treatment of a keloid for purposes of alleviating moderate, but persistently chronic, pain in a body part. *Id.* at 166. Because

discovery has not yet occurred in this case, the undersigned concludes that dismissal of Defendant CMS at this time is not appropriate.

In summary, in the opinion of the undersigned, Plaintiff's claims against Defendants Pandya and ITF Healthcare are properly dismissed with prejudice for failure to state a claim. However, the undersigned recommends denial of Defendant CMS' request for dismissal at this time. Accordingly, it is recommended that defendants' Motion for Dismissal (docket #7) be granted in part and denied in part.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                                  /s/ Timothy P. Greeley
                                                  TIMOTHY P. GREELEY
                                                  UNITED STATES MAGISTRATE JUDGE

Dated:   July 28, 2006